[No. 2257–2.   Division Two.   June 29, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT C.
HARDMAN, *Appellant.*

*Stanley G. Williams,* for appellant.

*John C. Merkel, Prosecuting Attorney,* and *Richard B.
Jones, Deputy,* for respondent.

PETRIE, C.J.—This appeal challenges the propriety of an *inventory* search of an automobile.

On the evening of September 5, 1975, defendant was driving his automobile in Port Orchard. At approximately 6:30 p.m. he lost control of the vehicle and struck a sign by the side of the road. This accident was witnessed by Deputy Marvin Parks of the Kitsap County Sheriff's Office, who was driving in the opposite direction. Deputy Parks yelled to defendant to stop, and defendant turned into the parking lot of a retail tire merchant and stopped his car in front of one of the service bays. Deputy Parks then approached defendant, who appeared to be in a state of intoxication, and subsequently arrested him for driving while under the influence of intoxicating liquor. Deputy Parks then determined to impound defendant's vehicle and conducted an on-the-scene inventory search, locating some marijuana and cocaine under the front seat. Defendant was charged and convicted on two counts of possession of controlled substances and one count of DWI. On appeal, he contends that evidence of the controlled substances should have been suppressed as the product of an unreasonable search, and that evidence presented to the jury was insufficient to support his conviction of DWI.

▮ Inventory searches, without benefit of a search warrant, have continuously been upheld in Washington when conducted incident to a lawful impoundment. *State v. Montague,* 73 Wn.2d 381, 438 P.2d 571 (1968); *State v. Bales,* 15 Wn. App. 834, 552 P.2d 688 (1976). It is necessary, however, that the impoundment be authorized by statute or ordinance, or, in the absence of a statute or ordinance, there must be reasonable cause for the impoundment. *State v. Singleton,* 9 Wn. App. 327, 511 P.2d 1396 (1973). An inventory of the contents of a vehicle reasonably impounded by the police has been held to be proper within the "community caretaking functions" of the police. *South Dakota v. Opperman,* 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976); *United States v. Balanow,* 528 F.2d 923 (7th Cir. 1976); *see Cady v. Dombrowski,* 413 U.S. 433, 37

L. Ed. 2d 706, 93 S. Ct. 2523 (1973); *State v. Lund,* 10 Wn. App. 709, 519 P.2d 1325 (1974). Such warrantless inventory searches, when not intended to discover evidence of a crime, have been justified by the "benign purposes" of protection of public safety, protection of the driver's property, protection of the police from danger or from liability for claimed thefts, or protection of temporary storage bailees against false charges. *See South Dakota v. Opperman, supra* at 369; *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974). These legitimate interests must, however, be weighed against the invasion of privacy inherent in an inventory of the vehicle's contents, in order. to determine if the inventory search is "reasonable" under the Fourth Amendment. *South Dakota v. Opperman, supra;* Note, *Warrantless Searches and Seizures of Automobiles,* 87 Harv. L. Rev. 835, 848–53 (1974). Thus, the State has the burden of proving that an impoundment is reasonable under the circumstances existing at time of the search, and an impoundment is improper when reasonable alternatives to impoundment exist. *State v. Bales, supra; State v. Greenway,* 15 Wn. App. 216, 547 P.2d 1231 (1976).

The State relies on the oral decision of the suppression hearing judge that the deputy would have been remiss in his duty to leave the car on the commercial premises where it would have been an obstruction for an indefinite time and subject to vandalism. The State also stresses that defendant offered neither objection nor any alternative to the impoundment.

We accept the several premises that defendant was incapable of driving the car, that he had no authority or permission to leave it on the private property, and further, that it was uncertain how long it might be before he could arrange to move the car. However, as we have noted, the burden is on the State to justify the impound procedure. Here, there was no testimony on behalf of the State as to Deputy Parks' exploration of reasonable alternatives or why he ultimately determined to impound the vehicle, nor

did the prosecution argue that impoundment under the circumstances was reasonable. Absent any express justification by the State in the record concerning the impoundment, the procedure risks creating a suspicion that it was a mere pretext for a general exploratory search of the car. *State v. Montague, supra.* The following language from *State v. Bales, supra* at pages 836–37, is appropriate to this situation:

> Although his vehicle was illegally parked, it could have easily been moved a short distance to a legal parking area and temporarily secured against theft. The defendant had indicated that a friend could arrive within a few minutes to pick up the vehicle. . . . When a friend or relative is available to move a vehicle for a defendant just arrested on a traffic charge, the arresting officer is not justified in calling for an impoundment absent other circumstances. Impoundment of a citizen's vehicle following his or her arrest on a traffic charge is inappropriate when reasonable alternatives to impoundment exist. To permit a subsequent warrantless inventory search to be accomplished thereby would be improper.

(Citations omitted.)

In *State v. Greenway, supra,* the court upheld an impoundment and search of a car which was parked in a restricted zone. The driver was stopped for a traffic violation, and he objected to the impoundment but did not offer any reasonable alternatives. The officer had learned, while ticketing the driver, that there was an outstanding felony warrant for his arrest and knew that the driver might be incarcerated for a long time before making bail. In addition to the restricted parking, sewer construction in the area suggested to the officer that the car would have to be moved. With these factors collectively justifying impoundment, we do not read *Greenway* as placing the burden on the person arrested to offer the policeman alternatives to the impoundment.

Nor do we think it practical to require a police officer to exhaust every possible alternative before he can conclude the vehicle may be impounded. Police have more to do than

to attempt to locate someone to remove a car, often from among a long list of friends and relatives given them by a driver who, as in this case, may not be a model of coherence.

Testimony at defendant's suppression hearing established, however, that Deputy Parks knew defendant and knew that his family lived nearby. Yet there is no indication whatsoever in the record that the deputy at least inquired of defendant whether someone might be readily available to come pick up the car, or gave thought to perhaps moving it himself to the corner of the parking area and locking it, with the idea that it could later be towed if it became a nuisance to the business before defendant could arrange to move it. We do not hold that impoundment of defendant's vehicle from the tire company lot could not have been justified as a matter of law, had the officer first explored and thereafter reasonably discarded other alternatives.[1] We do find, however, that the State failed completely to meet its burden of proving that the impoundment was conducted for a valid purpose and that no reasonable alternatives existed. *State v. Gluck, supra; State v. Bales, supra; State v. Singleton, supra.* If the State's burden to justify an impoundment has any meaning under the Fourth Amendment, the mere showing that the vehicle would otherwise have been left on private property for an unknown length of time is not sufficient to allow the impoundment and the resultant inventory search without a warrant. The State must demonstrate also that the officer at least thought about alternatives; attempted, if feasible, to get from the driver the name of someone in the vicinity who could move the vehicle; and then reasonably concluded from his deliberation that impoundment was in order.

[1]We note, in this context, that on September 8, 1975, only 3 days after defendant's arrest, RCW 46.52.1192 became effective. This statute expresses the legislature's determination that the impoundment of a vehicle which has not been abandoned, and which may be left on private property, other than family residential property, is unreasonable unless there is posted a sign indicating that unauthorized vehicles will be removed.

The evidence seized as a result of the unlawful search should have been suppressed, and the charges of possession of a controlled substance should have been dismissed.

Police exposure to possible liability by failing to impound and inventory a vehicle when its driver is taken into custody has been discussed in some detail in *Mozzetti v. Superior Court,* 4 Cal. 3d 699, 484 P.2d 84, 89–90, 94 Cal. Rptr. 412 (1971); *see also South Dakota v. Opperman, supra* at 378 (Powell, J., concurring). Without repeating those discussions, we note only that if, on the one hand, an impoundment of a vehicle and resultant inventory of its contents can be shown to be reasonable under the Fourth Amendment, then, on the other hand, the absence of circumstances to justify an impoundment should be a conclusive defense to any claim against the police for vandalism or theft of the vehicle after it was locked and allowed to remain legally parked. *See Evers v. Westerberg,* 38 App. Div. 2d 751, 329 N.Y.S.2d 615 (1972), *aff'd,* 32 N.Y.2d 684, 296 N.E.2d 257, 343 N.Y.S.2d 361 (1973). It would be anomalous for the State to be barred from unreasonably impounding a vehicle and from using evidence found therein, yet to expose the State and its agents, the police, to liability in tort when they leave it parked and locked.

Finally, inspection of the record reveals substantial evidence to support the defendant's conviction for DWI. Defendant admitted having drunk a shot of whiskey and four to six beers prior to driving, and he exhibited a distinct lack of physical coordination. The fact that his lack of coordination may have been due in part to drug usage, does not mean the jury could not have concluded that his driving had also been influenced by the alcohol he admittedly consumed. Defendant's allegation that the State's argument to the jury was improper was not advanced during the trial and may not be considered on appeal. *Kain v. Logan,* 79 Wn.2d 524, 487 P.2d 1292 (1971).

The judgment is reversed as to the two counts which charged possession of a controlled substance; and the judgment is affirmed as to the count which charged driving while under the influence of intoxicating liquor.

PEARSON and REED, JJ., concur.

Petitions for rehearing denied August 2, 1977.

Review denied by Supreme Court March 29, 1978.